### Bouchard Margules & Friedlander
A PROFESSIONAL CORPORATION
SUITE 1400
222 DELAWARE AVENUE
WILMINGTON, DELAWARE 19801
(302) 573-3500
FAX (302) 573-3501

ANDRE G. BOUCHARD

DIRECT DIAL
(302) 573-3510
abouchard@bmf-law.com

January 15, 2013

**BY HAND DELIVERY & E-FILING**

Hon. Richard G. Andrews
United States District Judge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street, Unit 9
Room 6325
Wilmington, Delaware 19801-3555

    Re:    *Starr Investments Cayman II, Inc. v. China MediaExpress Holdings, Inc., et al.*,
                 No. 11-233-RGA

Dear Judge Andrews:

    We respectfully submit this letter on behalf of Plaintiff Starr Investments Cayman II, Inc. ("Starr") to respond briefly to the Notice of Supplemental Authority filed by Defendant Deloitte Touche Tomatsu ("Deloitte") (D.I. 160), which discusses the Southern District of New York's recent decision in *In re Satyam Computer Servs. Ltd. Sec. Litig.*, No. 09 MD 2027 (BSJ) (S.D.N.Y. Jan. 1, 2012) ("*Satyam*").

    In *Morrison v. Nat'l Australia Bank Ltd.,* 130 S. Ct. 2869 (2010), the Supreme Court held that § 10(b) prohibits fraud in connection with (1) any transaction that "involves a security listed on a domestic exchange" or (2) a "purchase or sale … made in the United States." 130 S. Ct. at 2886. *Satyam* is readily distinguishable from *Morrison* for three fundamental reasons.

    First, as with the other inapplicable cross-listing cases on which Deloitte attempts to rely, *Satyam* involved an Indian public company whose common stock was listed in India, with ADS's listed in the U.S. Slip Op. at 8. Defendant China MediaExpress Holdings, Inc. ("CCME"), by contrast, is a Delaware corporation whose common stock was listed *only* on a U.S. exchange (AMEX and then NASDAQ) and *never* on any foreign exchange. No ADS's or cross-listing with foreign exchanges is involved.

    Second, *Satyam* concerned three types of transactions, none of which is similar to Starr's purchases: (1) the purchase of ordinary shares listed on Indian exchanges; (2) the exercise of

{BMF-W0315808.2}

The Honorable Richard G. Andrews
January 15, 2013
Page 2

options to purchase ordinary shares in India; and (3) the exercise *in India* of options to purchase ADS's listed on the NYSE. Slip Op. at 40. These transactions are all inapposite, because Starr purchased CCME common shares that *were at all times listed only on a U.S. exchange*. Starr bargained for, and received, U.S. listed common shares in a U.S. corporation. Listing in the U.S. was a material condition of sale, expressly required by the parties' agreements. Starr would not have purchased the securities otherwise.

Third, the *Satyam* plaintiffs' purchase of NYSE-listed ADS's was held not to be actionable because the "[t]ranfers of the ADSs occur[red] directly from Satyam in India" and "title [wa]s transferred in India." Slip Op. at 46 (emphasis in original). Thus these were not transactions "made in the United States" under the second prong of *Morrison*. Additionally, the *Satyam* decision, which is subject to appeal, incorrectly held that § 10(b) did not apply *even though* the ADS's were listed on a U.S. exchange, saying "That Satyam ADS's were also listed on the NYSE is *irrelevant*." *Id.* (emphasis added). Thus, the *Satyam* court simply disregarded *Morrison*'s holding that § 10(b) applies to any transaction that "involves a security listed on a domestic exchange," effectively ruling that the Supreme Court did not mean what it said when it used the word "listed." *Id.*

None of these three aspects of *Satyam* applies here. Starr satisfies the first prong of *Morrison* because it purchased securities listed on, and *only* on, a U.S. exchange. Starr also satisfies the second prong of *Morrison*, because, under the plain terms of the agreements, title to Starr's shares was irrefutably transferred from CCME to Starr *in New York*. Section 10(b) therefore applies to Starr's claims under *both* prongs of *Morrison*.

Deloitte does not assert that *Satyam* supports its argument that Starr failed to allege scienter, and the *Satyam* court did not address the scienter of auditors. Rather, the court's scienter analysis solely concerned independent directors on the Audit Committee ("AC Defendants").[1] That analysis is distinguishable for several reasons.

As an initial matter, in *Satyam* there were no allegations of motive and opportunity. Therefore the court required the plaintiffs' scienter allegations to "'approximat[e] actual intent'" (Slip Op. at 51), a standard that is not recognized in this Circuit. *See, e.g.*, *In re Suprema Specialities, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (requiring *either* (1) motive and opportunity *or* (2) conscious misbehavior or recklessness); *see also* Starr Br. at 28 [D.I. 130]. Beyond applying this inapposite standard, *Satyam* involved very different facts that illustrate why Starr has adequately plead scienter against all Defendants in four respects.

First, the *Satyam* plaintiffs failed to allege any facts showing that the AC Defendants benefitted personally from the Satyam fraud. Slip Op. at 53. Starr, by contrast, has alleged facts demonstrating financial motive with respect to Cheng and the Lins' desire to cash out and gain Earn-out Shares (AC ¶¶ 65, 137, 138, 196, 202, 329), Lam's desire to increase the value of his CCME shares and allow insiders to sell shares at inflated prices (*id.* ¶¶ 197), Green and Bird's

---

[1] The auditors, PricewaterhouseCoopers ("PwC"), had settled and did not participate in the motion to dismiss (*see* Slip Op. at 2 n.2). Indeed, *Satyam* differs from the case at bar insofar as only the Director Defendants sought dismissal and not the officers, auditors, or the corporation itself.

desire to cash out their pre-IPO shares (*id.* ¶¶ 76, 92, 153, 203, 329), and AJR and Deloitte's (the "Auditor Defendants") clear conflict of interest and desire to be appointed CCME's auditor (*id.* ¶¶ 22, 77-81).

Second, the *Satyam* court held that—absent motive and opportunity—the magnitude of the fraud "*standing alone*, cannot support a strong inference of scienter." Slip Op. at 53 (emphasis added). Here, unlike in *Satyam*, CCME was revealed to be a massive fraud less than one year after Deloitte's first and only audit, but Starr does not rely on such allegations alone. The Amended Complaint identifies not only motive but myriad other facts supporting scienter under the totality of the circumstances, including access to information and CCME management (AC ¶¶ 9-11, 13, 15, 91, 98, 134, 136, 183, 270-72, 275), certification of financials and signing of public filings (*id.* ¶¶ 9, 11, 17, 49, 53, 104-05, 112-13, 123-24, 150-51, 198), stock sales unusual in scope and timing (*id.* ¶¶ 17-18, 153, 194), involvement in CCME's operations (*id.* ¶¶ 9-11, 198, 270-72), and, with respect to the Auditor Defendants, red flags accompanied by GAAS violations (*id.* ¶¶ 165, 207-11, 222-26, 230-36, 251-58).

Third, the *Satyam* plaintiffs failed to identify specific information that would have revealed the fraud and with respect to which the AC Defendants failed to satisfy their duty to monitor. Slip Op. at 54. Here, Starr has pointed to ample information that would have revealed the fraud including, among other things, the red flags described in Deloitte's own March 2011 letter that did reveal the fraud (AC ¶ 165), most of which were present at the time of the audits.

Fourth, the *Satyam* court found that some of the red flags alleged were not red flags *as to the AC Defendants*.[2] There was no finding that those entrusted with examining and certifying the corporation's books and records—the auditors, senior management, and key founding shareholders—were merely negligent. Starr, by contrast, has alleged numerous red flags referenced above that all Defendants—including the Auditor Defendants, in particular—could only have been reckless in ignoring.

                                                Respectfully submitted,

                                                */s/ Andre G. Bouchard*

                                                Andre G. Bouchard
                                                (Bar No. 2504)

cc:     All Counsel of Record

---

[2] Specifically, there was no allegation that the Audit Committee received or reviewed management letters containing certain red flags, a PwC presentation that plaintiffs claimed reflected control deficiencies actually gave a positive assessment of the company, and the evidence showed the Board of Directors adequately discharged its monitoring duties with respect to a proposed "cover-up" acquisition. Slip Op. at 55-57.