IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Starr Investments Cayman II, Inc.,**<br><br>Plaintiff,<br><br>v.<br><br>**China MediaExpress Holdings, Inc., Deloitte Touche Tohmatsu, Tom Kwok, Zheng Cheng, Jacky Lam, Ou Wen Lin, Qingping Lin, Thousand Space Holdings Limited, Bright Elite Management Limited, Theodore Green, Malcolm Bird, A.J. Robbins, P.C.,**<br><br>Defendants. | Civil Action No. 11-233-RGA |

MEMORANDUM OPINION

Joel E. Friedlander, Friedlander & Gorris, P.A., Wilmington, DE; Jamie L. Brown, Esq., Friedlander & Gorris, P.A., Wilmington, DE; Nicholas A. Gravante, Jr., Esq. (argued), Boies, Schiller & Flexner LLP, New York, NY; Marilyn C. Kunstler, Esq. (argued), Boies, Schiller & Flexner LLP, New York, NY, attorneys for Plaintiff.

Thad J. Bracegirdle, Esq., Wilks, Lukoff & Bracegirdle, LLC, Wilmington, DE, attorney for Defendants China MediaExpress Holdings, Inc. and Zheng Cheng.

Susan M. Hannigan, Esq., Richards, Layton & Finger, P.A., Wilmington, DE; Raymond J. DiCamillo, Esq., Richards, Layton & Finger, P.A., Wilmington, DE; Michael D. Warden, Esq. (argued), Sidley Austin LLP, Washington, D.C.; Elizabeth L. Howe, Esq., Sidley Austin LLP, Washington, D.C., attorneys for Defendants Deloitte Touche Tohmatsu and Tom Kwok.

Stephen C. Norman, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Lee Ann Russo, Esq. (argued), Jones Day, Chicago, IL, attorneys for Defendants Ou Wen Lin, Qingping Lin, Thousand Space Holdings Limited, and Bright Elite Management Limited.

Peter B. Ladig, Esq., Morris James LLP, Wilmington, DE; Donald H. Chase, Esq. (argued), Morrison Cohel LLP, New York, NY, attorneys for Defendants Green and Bird.

Martin D. Haverly, Esq., Martin D. Haverly, Attorney at Law, Wilmington, DE; Michael E. Marr, Esq. (argued), Michael E. Marr, Attorney at Law, Baltimore, MD, attorneys for Defendant A.J. Robbins, P.C.

August 21, 2014

ANDREWS, U.S. District Judge:

Presently before the Court are Plaintiff's Motion for Entry of Default Judgment Against China MediaExpress Holdings, Inc. (D.I. 197), Defendants Theodore Green and Malcolm Bird's Motion to Dismiss (D.I. 213), Defendant A.J. Robbins, P.C.'s Motion to Dismiss (D.I. 216), Defendants Thousand Space Holdings Ltd. and Bright Elite Management Ltd.'s Motion to Dismiss (D.I. 219), Defendants Ou Wen Lin and Qingping Lin's Motion to Dismiss (D.I. 221), Defendant Deloitte Touche Tohmatsu's Motion to Dismiss (D.I. 226), and Defendant Tom Kwok's Motion to Dismiss. (D.I. 249). The motions have been fully briefed. The motions set forth a number of reasons for dismissal, many of which are particular to the individual defendants. These arguments will be dealt with in turn. However, almost all of the motions address the application of *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), so the *Morrison* issue will be dealt with as to all defendants.

## I.     Legal Standard

To survive a challenge under Fed. R. Civ. P. 12(b)(6), the complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). In order to determine whether the complaint states a plausible claim, the Court accepts as true only well-pleaded facts. *Id.* at 1951. Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be pled with even more particularity. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007).

In addition to Rule 9(b), a plaintiff alleging securities fraud must also comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). The PSLRA requires that any securities fraud claim brought under the Exchange Act must

"specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Tellabs*, 551 U.S. 308.

In order to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reasonable reliance by Plaintiff on the misrepresentation or omission; (5) economic loss; and (6) causation. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *In re Aetna Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).

## II.    Discussion

The facts of this case are voluminous and I therefore do not repeat them all. Similar allegations are made in *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y. 2013).

Plaintiff Starr Investments is an institutional investor based in the Cayman Islands. Between January and December 2010, Starr purchased one million shares of preferred stock and over three million shares of common stock in ChinaMediaExpress Holdings, Inc. ("CCME"). (D.I. 207 ¶¶ 138, 145, 193, 194). In the beginning of 2011, independent investment analysts published reports alleging that CCME was engaging in a pump and dump scheme to inflate stock price so that insiders could sell. By March 2011, Deloitte, CCME's auditor, confirmed that CCME had vastly overstated its financial condition. Due to the irregularities which Deloitte

2

uncovered, Deloitte resigned as auditor and trading of CCME stock on the NASDAQ was halted. The SEC ultimately deregistered the company.

Plaintiff generally asserts violations of Section 10(b) of the Exchange Act and Rule 10b-5, violation of Section 20(a) of the Exchange Act, and numerous common law fraud and negligent misrepresentation claims. Defendants had previously filed similar motions to dismiss and Plaintiff had filed letters outlining proposed amended complaints to overcome those motions. During oral argument on November 16, 2012, the Court directed the Plaintiff to file a final amended complaint, after which the parties could file motions related to that complaint. (D.I. 263, *see also* D.I. 206 ¶¶ 1 & 2). Plaintiff filed the second amended complaint[1] on August 27, 2013. (D.I. 207).

A. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 273 (2010).

Defendants argue that Plaintiff's § 10(b) claims should be dismissed because Section 10(b) of the Exchange Act does not apply to the transactions at issue. In *Morrison*, the Court held that "[s]ection 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Morrison*, 561 U.S. at 273. The complaint alleges that the purchased stock was listed on a U.S. Exchange. (D.I. 207 ¶¶ 59-68). Defendants argue that because Starr did not purchase the stock through an exchange that the protections of § 10(b) do not apply. The Court sees no reason why this should be so. While Defendants characterize CCME as a "Chinese company," CCME is a Delaware corporation. CCME's stock was never listed on a foreign exchange; it was only listed on an American exchange. *Morrison* holds that § 10(b) applies to a purchase or sale of "a security listed on an

---

[1] By my count, this was the fourth amended complaint, but since the record refers to this complaint as the "second" amended complaint, I will do so too.

American stock exchange." There is no requirement that the sale occur via the stock exchange. The Court sees no reason why a public sale of stock would be subject to the protections of the Exchange Act but a private sale of the same stock would not be so protected.

I therefore grant Plaintiff's Motion for Entry of Default Judgment Against China MediaExpress Holdings, Inc. (D.I. 197). To the extent any motion to dismiss is based on *Morrison*, it is denied.

### B. Defendants Green and Bird.

Defendants Green and Bird were directors and officers of TM Entertainment and Media, Inc. ("TM"), a Delaware corporation formed as an investment vehicle. TM identified Hong Kong Mandefu Holding Limited as a potential merger target and undertook a reverse merger, resulting in the creation of CCME. After the merger, Green and Bird resigned from the CCME board. In January 2010, Green, Bird, and other TM shareholders executed a stock transfer agreement (the "TM Agreement") with Starr pursuant to which Starr acquired 110,000 shares of CCME stock previously owned by Green and Bird. Green and Bird sold their remaining CCME stock after it was registered, and a few weeks before CCME's fraud was uncovered.

Plaintiff asserts claims against Green and Bird under Section 10(b) of the Exchange Act and Rule 10b-5, under Section 20(a) of the Exchange Act, for aiding and abetting fraud, and for conspiracy to commit fraud. Defendants Green and Bird argue that Plaintiff failed to properly plead scienter, a material misstatement or omission, and reliance for the Section 10(b) and Rule 10b-5 claims, as well as the state law claims, and failed to plead control for the Section 20(a) claim.

Previously, in order to plead scienter in the Third Circuit, the requisite "strong inference" of fraud could be established "either (a) by alleging facts to show that defendants had both

4

motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006). However, subsequent Third Circuit caselaw makes clear that "'motive and opportunity' may no longer serve as an independent route to scienter." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009).

I agree with Defendants Green and Bird that Plaintiff failed to properly plead scienter under the heightened standards of the PSLRA as interpreted by the Third Circuit. In essence, Plaintiff alleges that if Green and Bird had performed proper due diligence, they would have uncovered the deception. In an almost identical class action involving the same facts, the U.S. District Court for the Southern District of New York dismissed § 10(b) claims against Defendants Green and Bird. There, the court held that "[a]llegations that Green and Bird 'should have known' that Hong Kong Mandefu's financial information was fraudulent is insufficient to plead recklessness under § 10(b) and Rule 10b–5." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013). I agree.

Plaintiff points to language in the *McIntire* case which implies that had the plaintiff there pled that Defendants Green and Bird sold stock, as Plaintiff pled here, the outcome would have been different. In *McIntire*, the court noted that the plaintiffs had "failed to allege that either Green or Bird traded any of their stock, let alone that such hypothetical stock sales were 'unusual.'" *McIntire*, 927 F. Supp. 2d at 127. Here Plaintiff alleges that Green and Bird sold all of their stock at the first chance. However, this does not change the outcome. This portion of *McIntire* was in relation to the "motive and opportunity" test, which the Third Circuit does not recognize. The fact that Green and Bird cashed out their stock does not cure Plaintiff's defective pleading.

Because Plaintiff has failed to properly plead scienter, I dismiss the Section 10(b) and Rule 10b-5 claims against Defendants Green and Bird. I also dismiss the Section 20(a) claims against Green and Bird. Section 20(a) claims must plead with particularity: (1) a primary securities violation by a third party within the ambit of defendant's control; (2) the defendant's control of the primary violator within the meaning of the statute; and (3) culpable participation by the defendant. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). Here Plaintiff has not adequately pled that Green and Bird had control of the primary violator. Plaintiff's allegations concern Green and Bird's control over TM, not CCME. Merely signing a Form S-3[2] is not enough to demonstrate control.

As for the state law claims against Defendants Green and Bird, they are not subject to the heightened pleading requirements of the PSLRA. The state law claims meet Rule 9(b)'s lower pleading requirements. Under Fed. R. Civ. P. 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." I therefore exercise supplemental jurisdiction over the state law claims.

    C.  Defendant A.J. Robbins, P.C.

Defendant A.J. Robbins, P.C. is a Colorado accounting firm. In January 2009, A.J. Robbins was engaged by Hong Kong Mandefu to audit its financial statements. Following the acquisition of Hong Kong Mandefu by TM, A.J. Robbins served as the independent auditor of CCME until December 4, 2009. Plaintiff asserts four causes of action against A.J. Robbins: violation of Section 10(b) and Rule 10b-5; common law fraud; negligent misrepresentation; and aiding and abetting fraud and breach of fiduciary duty. Defendant A.J. Robbins moves to dismiss the Section 10(b) claims because of a failure to plead scienter, reliance, and misstatements, and

---

[2] A Form S-3 is known as the "Registration Statement Under the Securities Exchange Act of 1933." It may be used for the registration of securities which are offered for sale in specified transactions. *See* 17 CFR § 239.13.

moves to dismiss the state law claims because of failure to satisfy Rule 9(b) and a lack of personal jurisdiction.

I believe that Plaintiff properly pled scienter and reliance. Most of the cases that Robbins cites are Second Circuit Cases. However, in the Third Circuit, "[a]t the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss."[3] *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006). This is exactly what Plaintiff alleges. Additionally, Plaintiff adequately pled reliance. While the Plaintiff hired another accounting firm, the complaint alleges that it relied on financial statements which were audited by Robbins. (D.I. 207 ¶¶ 25, 41, 49, 280, 284, 361). Whether that reliance was reasonable is a factual question. I therefore deny Defendant Robbins' motion to dismiss the Section 10(b) claims.

Because Plaintiff has a Section 10(b) claim against Robbins, and Robbins is a domestic accounting firm, the Court has personal jurisdiction over Robbins. *See* 15 U.S.C. § 78aa; *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (holding that where Congress has authorized nationwide service of process, such as in the Exchange Act, a "national contacts analysis" is appropriate when determining personal jurisdiction). Additionally, because the Section 10(b) claims survive the motion to dismiss, the common law fraud claim also survives under the lower pleading standard of Fed. R. Civ. P. 9(b). As for the negligent misrepresentation claim, I do not believe that the exception to the economic loss doctrine applies. In order for the exception to apply, Robbins must have intended for the Plaintiff to rely on the information. *See* Restatement (Second) of the Law of Torts § 552(2); *Lundeen v. PricewaterhouseCoopers, LLC*,

---

[3] GAAS refers to generally accepted auditing standards. GAAP refers to generally accepted accounting principles.

2006 WL 2559855, at *1 & n.3 (Del. Super. Aug. 31, 2006)("[T]he applicable standard for the tort of negligent misrepresentation in an accounting malpractice action lies in section 552 of the Restatement."). Any allegation that Robbins had the requisite intent is conclusory. I therefore dismiss the negligent misrepresentation claim. I likewise dismiss the aiding and abetting claim because Plaintiff failed to plead knowledge.

> D. <u>Defendants Ou Wen Lin and Qinping Lin and Defendants Thousand Space Holdings Ltd. and Bright Elite Management Ltd.</u>

Defendants Thousand Space Holdings Ltd. and Bright Elite Management Ltd. are British Virgin Island corporations (hence, the "BVI Defendants") owned by their sole directors and shareholders, Ou Wen Lin and Qingping Lin. Ou Wen Lin and Qingping Lin are brothers and founding shareholders of Hong Kong Mandefu. In August 2010, the Lin brothers received earn-out shares in CCME. They subsequently sold 1.5 million shares of CCME stock to the Plaintiff in October 2010. Plaintiff asserts two claims against the BVI Defendants: violation of Section 10(b) and Rule 10b-5; and conspiracy to commit fraud. Plaintiff asserts three claims against the Lin brothers: violation of Section 10(b) and Rule 10b-5; violation of Section 20(a); and conspiracy to commit fraud. The Lin brothers and the BVI Defendants move to dismiss these claims because of failure to adequately plead misrepresentation, reliance, and scienter. Additionally, the Lin brothers claim that this Court does not have personal jurisdiction over them.

Defendants' motion to dismiss attempts to paint the Lin brothers and the BVI Defendants as "passive investors." However, the complaint alleges that the Lin brothers were far more than passive, in that they had a long-standing close relationship with CCME, control over members of the CCME Board of Directors, including their employee Kung, who was Chairman of the CCME

audit committee, and access to and control over internal reports and other data and information about CCME's finances, operations, and sales. (D.I. 207 ¶¶ 37, 196, 198, 200, 253).

However, I find that the complaint fails to adequately plead misrepresentation. The Plaintiff identifies three paragraphs in the second amended complaint which supposedly attribute misrepresentations to the Lin brothers. (D.I. 233 at p. 59, citing D.I. 207 ¶¶ 15, 38, 133). None of these paragraphs sufficiently plead a misstatement. They do not identify a conversation, email, letter, or any other document where the Lin brothers or the BVI Defendants made any misstatement except to allege that the Lin brothers said that CCME was a highly successful company. This is not enough. I therefore dismiss the Section 10(b) claims against the Lin brothers and the BVI Defendants.

However, I deny the Lin brothers' motion to dismiss the Section 20(a) claims. The complaint sufficiently alleges that the Lin brothers are control persons. The complaint sets forth a sufficient basis to conclude that the Lins had control over CCME and that they were culpable. As for the conspiracy to commit fraud claims against the Lin brothers and the BVI Defendants, I deny the Defendants' motion to dismiss and find that they are adequately pled.

The Lin brothers raise another argument as to why the claims against them should be dismissed. The Lin brothers claim that the Court does not have personal jurisdiction over them. I disagree. Specific jurisdiction may be found if "the defendant should reasonably anticipate being haled into court there." *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990) (internal citation omitted). General jurisdiction may be found if the defendant maintained continuous and substantial contacts with the forum. *Reliance Steel Prods. C. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588-89 (3d Cir. 1982). When 15 U.S.C. § 78aa applies, the relevant forum for analyzing the extent of the defendant's contacts is the United

9

States as a whole. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368-69 (3d Cir. 2002). 15 U.S.C. § 78aa applies because there is currently a Section 20(a) claim against the Lin brothers. The inquiry is therefore properly a minimum contacts analysis based on the Lins' national contacts.

I believe that specific jurisdiction over the Lin brothers is proper based on the allegations that the Lin brothers participated in a conspiracy to defraud, where substantial acts in furtherance of that conspiracy occurred in Delaware. Plaintiff alleges that the Lin brothers knowingly participated in a conspiracy to bring CCME to the United States securities market to defraud investors, and that substantial acts in furtherance of that conspiracy occurred in Delaware. (D.I. 207 ¶¶ 1, 14, 16, 53, 251-57, 401-10). This is enough to subject the Lins to personal jurisdiction in the United States. *See Instituto Bancario Italiano, SpA v. Hunter Eng'g Co., Inc.*, 449 A.2d 210 (Del. 1982).

Additionally, it is hard to imagine that the Lin brothers could not foresee being haled into court in the United States, as they are parties to share sale agreements ("SSAs") which contained forum selection clauses agreeing to jurisdiction in Delaware. (D.I. 207 ¶ 52). The Lin brothers argue that the SSAs were not signed in their personal capacity, but in their corporate capacities as directors of the BVI Defendants. However, there is no dispute that the Lin brothers are the sole shareholders of the BVI Defendants. The SSAs were thus signed for the Lin brothers' personal benefit. The BVI Defendants are the Lin brothers' alter egos, or alternatively, the Lin brothers are third party beneficiaries of the SSAs. It is probable that the Lin brothers would foresee being haled into court in the United States when they signed an agreement consenting to jurisdiction in the United States.

E.  Defendant Deloitte Touche Tohmatsu and Defendant Tom Kwok.

Defendant Deloitte Touche Tohmatsu is a Hong Kong accounting firm which was engaged by Plaintiff to perform an audit on CCME. Deloitte served as CCME's independent auditor from December 4, 2009 to March 11, 2011. Defendant Tom Kwok is a partner in Deloitte and introduced one of Plaintiff's employees to CCME. Plaintiff asserts four claims against Defendants Deloitte and Kwok: violation of Section 10(b) and Rule 10b-5; common law fraud; negligent misrepresentation; and aiding and abetting fraud and breach of fiduciary duty. Defendant Deloitte moves to dismiss the Section 10(b) claim for failure to adequately plead misrepresentation and scienter. Defendant Deloitte also moves to dismiss the state law claims for lack of personal jurisdiction or alternatively under *forum non conveniens*. Defendant Kwok moves to dismiss for lack of personal jurisdiction, because the Section 10(b) claim is barred by the statute of limitations, and because Plaintiff fails to adequately plead the Section 10(b) and state law claims.

For the same reasons I denied Defendant Robbins' motion to dismiss the Section 10(b) and common law fraud claims, I also deny Defendant Deloitte's motion to dismiss those claims. "At the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006). Plaintiff pled even more red flags against Deloitte than it did against Defendant Robbins. Additionally, in *McIntire*, using an even more demanding standard than present here, the court denied Defendant Deloitte's motion to dismiss. *See McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 133-36 (S.D.N.Y. 2013). As for Deloitte's personal jurisdiction argument, 15 U.S.C. § 78aa applies.[4] As for *forum non conveniens*, the rest of the Defendants did not object on those

---

[4] Defendant Deloitte's arguments are premised on the Section 10(b) claims being dismissed.

11

grounds, and I see no reason to litigate this matter partially in the United States and partially in China.

As for the negligent misrepresentation claim, I believe that the exception to the economic loss doctrine applies. In order for the exception to apply, Deloitte must have intended for the Plaintiff to rely on the information. Plaintiff engaged Deloitte to perform the audit as a requirement of Plaintiff's investment. Deloitte must have intended that Plaintiff would rely on the audit. As for the aiding and abetting claim, unlike with Defendant Robbins, Plaintiff pled knowledge, (D.I. 207 ¶ 42), and I therefore deny Deloitte's motion to dismiss that claim.

Turning to Defendant Kwok, I find that the Court has specific jurisdiction over him. Both parties seem to rely on the "effects test," first articulated in *Calder v. Jones*, 465 U.S. 783 (1984), under which the plaintiff must show that "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.*" IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). However, none of the securities cases cited by the parties actually invokes the "effects test." In fact, they imply that the effects test merely states one way in which personal jurisdiction may be found. *See S.E.C. v. Straub*, 921 F. Supp. 2d 244, 254 (S.D.N.Y. 2013) ("Although it is true that the so-called effects test 'must be applied with caution, particularly in an international context,' the Supreme Court has never suggested—whether in *Calder* or otherwise—that the conditions cited by Defendants are necessary for a Court to exercise jurisdiction. Rather, the conditions are merely sufficient to bestow jurisdiction.") (internal citations omitted).

Plaintiff alleges that Kwok misrepresented CCME's financial condition to convince Plaintiff to invest in a U.S. listed corporation. Every securities case the parties cite makes clear that these types of actions are sufficient to confer personal jurisdiction. *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 491 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (directing the plaintiff to purchase shares of stock was action directed at the United States); *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) (jurisdiction proper where defendants engaged in cover-up knowing that the company traded ADRs on an American exchange);[5] *Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1014 (D.N.J. 1996) (jurisdiction proper where defendants' actions influenced price of securities on NASDAQ). While Defendant Kwok was not a director of CCME, Plaintiff alleges that he was part of the fraud. This is enough to subject him to personal jurisdiction.

Defendant Kwok argues that Plaintiff's Section 10(b) claim is barred by the applicable statute of limitations. Plaintiff responds that the limitations period was tolled because it filed a proposed amended complaint within the limitations period naming Kwok as a defendant. Kwok replies that only a motion for leave to amend is sufficient to toll the limitations period. While I agree that the caselaw cited by Plaintiff discusses tolling in the context of a motion for leave to amend, requiring a motion would elevate form over substance. The proposed amended complaint was the functional equivalent of a motion for leave to amend, and I therefore find Plaintiff's claims timely.

---

[5] ADRs are American Depositary Receipts, which are certificates issued by a U.S. Bank representing shares of a foreign stock. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002) (describing ADRs "in some detail").

13

Defendant Kwok next argues that Plaintiff's allegations that he "induced" the investment fail to state a claim. I agree. Defendant Kwok argues that "the manipulative or deceptive device or contrivance must be shown to have been accomplished by the use of some means or instrumentality of interstate commerce." (D.I. 250 at p. 15, citing *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 737 (10th Cir. 1984)). Plaintiff concedes that the only instrumentality of interstate commerce was Deloitte's audit opinion. However, as discussed below, that is not attributable to Defendant Kwok.

Under Section 10(b) and Rule 10b-5, only the "maker" of a statement can be liable for the statement. *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301-02 (2011). Defendant Kwok did not sign the audit opinions. In similar cases, courts have held that engagement partners are not liable for "making" the opinions contained in audits issued by their firms. *See WM High Yield Fund v. O'Hanlon*, 2013 WL 3231680, at *5, *7 (E.D. Pa. June 27, 2013); *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 21488087, at *8 (S.D.N.Y. June 25, 2003). Plaintiff cites to *S.E.C. v. Stoker*, 865 F. Supp. 2d 457 (S.D.N.Y. 2012), for the proposition that a defendant's role in drafting and editing a document is sufficient to allege that the defendant was responsible for all the misstatements and omissions in that document. (D.I. 253 at p. 15). However, *Stoker* involved Section 17(a), and "the Court conclude[d] that *Janus* implicitly suggests that Section 17(a)(2) should be read differently from, and more broadly than, Section 10(b)." 865 F. Supp. 2d at 465. Section 10(b) is read more narrowly than Section 17(a) because Section 10(b) contains a private right of action, whereas Section 17(a) does not. *See id.* Accordingly I cannot attribute the statements in Deloitte's audit opinion to Defendant Kwok. I therefore dismiss the Section 10(b) claims against Defendant Kwok.

Defendant Kwok next asks that I dismiss the state law claims because Plaintiff's "common law fraud claim is based on the same flawed allegations as its § 10(b) claim." (D.I. 250 at p. 19). I cannot decide this issue on a single sentence of argument. While Deloitte's statements may not be attributable to Defendant Kwok under Section 10(b), under common law they may well be. I therefore deny Defendant Kowk's motion to dismiss the common law fraud claim. As for the negligent misrepresentation claim, I believe that the exception to the economic loss doctrine applies. In order for the exception to apply, Defendant Kwok must have intended for the Plaintiff to rely on the information. Plaintiff engaged Deloitte, via Defendant Kwok, to perform the audit as a requirement of Plaintiff's investment. Deloitte and Kwok must have intended that Plaintiff would rely on the audit. As for the aiding and abetting claim, unlike with Defendant Robbins, Plaintiff pled knowledge, (D.I. 207 ¶ 42), and I therefore deny Defendant Kwok's motion to dismiss that claim.

### III.   Conclusion

Plaintiff's Motion for Entry of Default Judgment Against China MediaExpress Holdings, Inc. (D.I. 197) is **GRANTED**. Defendants Theodore Green and Malcolm Bird's Motion to Dismiss (D.I. 213), Defendant A.J. Robbins, P.C.'s Motion to Dismiss (D.I. 216), Defendants Thousand Space Holdings Ltd. and Bright Elite Management Ltd.'s Motion to Dismiss (D.I. 219), and Defendant Tom Kwok's Motion to Dismiss (D.I. 249) are **GRANTED IN PART** and **DENIED IN PART**. Defendants Ou Wen Lin and Qingping Lin's Motion to Dismiss (D.I. 221) and Defendant Deloitte Touche Tohmatsu's Motion to Dismiss (D.I. 226) are **DENIED**.